

**Retailer #:** 241835
**Cost Center #:** 137711

## RETAIL FACILITY LEASE

**THIS LEASE** is effective June 1, 2003 ("Effective Date") between Motiva Enterprises LLC ("Lessor") whose address is 12700 Northborough Drive, Houston, TX  77067, and LAKEVIEW AUTO CARE INC / LAKEVIEW AUTO CARE INC ("Lessee") whose address is 1050 WASHINGTON STREET, BRAINTREE, MA  02184.

This Lease is comprised of two parts.  PART I sets forth the variable provisions of this Lease and references the applicable articles in PART II that sets forth the general provisions. To the extent there is a conflict between PART I and PART II, the provisions in PART I are controlling.

### PART I

**Article No.**

1(e)    Leased Premises are located at: 1050 WASHINGTON STREET, BRAINTREE, MA  02184.

3    This Lease begins on the Effective Date specified above and expires May 31, 2006 ("Expiration Date").

4    Rent:  Lessee shall pay Lessor the following monthly base rentals, **PLUS THE DOUBLE NET EXPENSES WHICH MAY BE ADJUSTED AT THE END OF EACH 12-MONTH PERIOD AS DESCRIBED IN THIS ARTICLE AND IDENTIFIED ON EXHIBIT A:**

| | |
|---|---|
| Months 1 – 12: | $4,980.00 |
| Months 13 – 24: | $4,980.00 |
| Months 25 – 36: | $5,100.00 |

21    Notice – Underlying lease:  The Premises are subject to an underlying lease(s) that will expire on 10/31/2003; provided, however, the underlying lease may expire earlier upon 30 days notice by Lessor to its landlord(s).

Rev 2002/10/24 (Ret055)
Retail Facility Lease

## PART II

1.    **DEFINITIONS.**  As used in this Lease, the terms below have the following meanings, whether singular or plural:

(a)    "Alteration" – Any addition, modification, removal, or replacement of any building, improvement, or equipment on the Premises.

(b)    "Business Entity" – Any legal entity that is not an individual or sole proprietorship, including, without limitation, a partnership, corporation, limited liability company, limited liability partnership, or association.

(c)    "Law" – Any applicable statute, constitution, ordinance, regulation, rule, administrative order or other requirement of any federal, state, or local government agency or authority in effect at the time of execution or during the term of this Lease.

(d)    "PMPA" – The Petroleum Marketing Practices Act as may be amended from time to time (15 U.S.C. §2801 et seq.).

(e)    "Premises" – The land owned or leased by Lessor at the location identified in PART I together with the buildings, improvements, and equipment existing as of the Effective Date of this Lease and located thereon after the Effective Date with Lessor's prior written consent, subject to Lessor's rights under Article 2.

(f)    "RSA" – The Retail Sales Agreement entered into between the parties contemporaneously with this Lease.

2.    **LEASED PREMISES AND USE.**

(a)    Lessor leases the Premises to Lessee under the terms of this Lease.  Lessee shall use the Premises solely for the operation of a motor fuel dispensing station or, if approved by Lessor, an automobile service station, or for the uses authorized by Lessor under the RSA.  Lessee must obtain Lessor's prior written consent to use the Premises for any use not authorized under this article.  If Lessor consents to Lessee's additional use, Lessor reserves the right to a portion of the fees, income or other revenue generated by such use.

(b)    Lessor reserves the right to make use of the Premises so long as any such use does not materially interfere with the authorized use of the Premises then being made by Lessee.  Without limiting the generality of the foregoing, Lessor's use of the Premises may include (1) the erection of additional buildings or Alterations of the Premises, in accordance with Article 9, to operate a car wash, convenience store, fast food facility, laundry, or any other business or (2) the installation of pay telephones, Automated Teller Machines, and other financial services, advertising signs and outdoor billboards, wireless radio signal devices and related equipment and facilities, video display terminals, computers, vending and other similar equipment.  Lessor reserves the right to any fees, income, rentals or other revenue generated by such use or associated facilities.

(c)    This Lease is subject to all covenants and restrictions contained in any deed or lease conveying or leasing the Premises to Lessor and all other deed restrictions, zoning laws, easements or encumbrances affecting the Premises, now or after the Effective Date of this Lease.  Lessor reserves the right to grant a mortgage or security interest in the fee and leasehold interests affecting the Premises.  This Lease is also subject and subordinate to any mortgage affecting the Premises now or after the Effective Date of this Lease provided the mortgage contains a "non-disturbance" clause requiring that the mortgagee not disturb the possession of Lessee, its successors, and assigns as long as they are not in default under this Lease.  Upon Lessor's request, Lessee shall promptly execute and deliver to Lessor any instrument required by a mortgagee relating to Lessee's subordination of its rights under this Lease.  Lessor also reserves the right to grant easements, rights-of-way, and licenses affecting the Premises.

(d)    Lessee may not use the underground storage tank ("UST") system, including the associated product lines or motor fuel dispensing equipment provided by Lessor under this Lease to sell motor fuels not bearing a brand licensed to Lessee under the RSA.

3.    **TERM.**  The term of this Lease is identified in PART I but is subject to Lessor's termination and nonrenewal rights under Article 18. Neither party has any obligation to renew this Lease, or any extension of this Lease agreed to in writing by the parties, or continue the relationship established hereunder beyond the term provided in this Lease except if required by Law.  If by operation or effect of Law Lessor is required to continue its relationship established under this Lease with Lessee beyond the term specified in this article and the parties do not extend or renew this Lease by written instrument, then the term of this Lease will be

Rev 2002/10/24 (Ret055)
Retail Facility Lease

extended on a month-to-month basis on the same terms and conditions of this Lease for not more than 6 successive months, subject to (a) termination of this Lease by either party during such extension period in accordance with the notice provisions of Article 25 or (b) nonrenewal by Lessor at the end of any such month.

4. **RENT.**

(a) Lessee shall pay Lessor as monthly rent, without deduction, set off, notice, or demand (1) the base rent set forth in PART I together with (2) the double net expenses set forth in Exhibit A. Lessor may adjust the double net expenses at the end of each 12 month period during the term of this Lease to reflect any changes in these expenses (whether increases or decreases in the amounts) based on the applicable expenses for the previous period(s). If Lessor makes such an adjustment, Lessor shall provide Lessee written notification of the same. In addition, if during the term of this Lease Lessor makes an Alteration (whether a single Alteration or several Alterations as part of a single project) to the Premises of $100,000 or more (which amount may be amended by Lessor from time to time upon written notice to Lessee), upon completion of the Alteration and notification to Lessee, Lessee's rent will be adjusted by Lessor in a manner to reflect Lessor's additional investment in the Premises as reasonably determined by Lessor.

(b) Lessee shall pay Lessor the rent not later than the first day of each month, except that rent due on a weekend or federal holiday is payable on the business day following the due date. Rent for any period less than a calendar month will be prorated.

(c) Lessee shall pay the rent in accordance with Lessor's payment terms in effect from time to time. Lessor may require that Lessee pay the rent by electronic funds transfer initiated by Lessor or by any other method that Lessor may designate from time to time, and Lessee shall provide any written authorizations required for such purpose. Lessee shall maintain sufficient funds to cover such payment. In addition to any other remedies available to Lessor for Lessee's failure to comply with this article: (1) Lessee shall pay to Lessor a reasonable administrative fee for each instance of payment that Lessee does not have sufficient funds to cover payment and all overdue sums will bear interest at the maximum lawful rate per annum from the date due until paid, (2) Lessor may setoff or equitably recoup against any amount then due Lessee, (3) Lessor may defer further deliveries of the Products sold to Lessee under the RSA until payment of all outstanding indebtedness is made, and (4) Lessor may terminate or non-renew Lessee as set forth in Article 18.

5. **LESSEE'S EFFORTS.** Lessee shall devote Lessee's reasonable efforts to preserve the value of the Premises for the authorized use as specified in Article 2 and the reputation of Lessor by serving effectively and efficiently the needs of the public and consumers. Lessee shall personally and actively manage the business conducted on the Premises to assure good faith compliance with the terms of this Lease.

6. **COMPLIANCE WITH LAWS.** Lessee shall comply with all Laws, licenses, and permits relating to the Premises or any use thereof, including, but not limited to, any special zoning or other governmental restrictions and any Laws pertaining to environmental protection, safety, and health matters.

7. **TAXES AND OTHER BUSINESS CHARGES.**

(a) Lessee shall pay: (1) all federal, state, and local taxes, excises, duties, and other assessments and charges, now or hereafter levied, ("Taxes") of any kind and nature assessed by any governmental authority relating to the operation, occupancy, or use of the Premises or business conducted by Lessee thereon including, without limitation, those Taxes measured by income and (2) any other fees or business charges (whether third party or Lessor's internal charges) that relate to the Premises or business conducted thereon. Without limiting the generality of the foregoing, any of the Taxes, fees or business charges paid by Lessor that relate to the Premises or business conducted thereon by Lessee including, but not limited to, ad valorem, sales and use, and personal property Taxes on Lessor's property and equipment or any leased property and equipment located on the Premises will be passed on to Lessee as a double net expense as described in Article 4 and Exhibit A. Notwithstanding the foregoing, Lessee shall not commence any appeal of the ad valorem, sales and use, or personal property Taxes on Lessor's property.

(b) Unless Lessor elects to do so at Lessee's expense, Lessee shall obtain and maintain, at Lessee's expense and in Lessee's name unless directed by Lessor otherwise, all licenses, registrations, and permits necessary for the operation of Lessee's business on the Premises, including, but not limited to, licenses or fees to operate the UST system on the Premises.

(c) Lessee shall timely pay all utility expenses, including, but not limited to, those relating to water, sewer, gas, telephone, electricity, and power to operate the Premises. Lessee shall transfer, or request the transfer of, all meters and accounts to

-4-

Lessee's name unless Lessor directs otherwise. Lessee shall pay all other operating expenses relating to the operation of the business on the Premises.

(d)    If Lessor satisfies any of Lessee's obligations under this article, Lessee shall reimburse Lessor upon demand for the costs incurred by Lessor in doing so without prejudice to any other rights or remedies available to Lessor under this Lease or at Law.

8.    **MAINTENANCE.**  As of the Effective Date of this Lease, Lessee acknowledges that the Premises are in good condition and repair.  At Lessee's own expense, Lessee shall timely perform the maintenance obligations set forth in Exhibit B, as may be amended by Lessor from time to time upon written notice to Lessee. Lessee shall keep Lessee's own property in good condition and repair. Lessor shall perform all other maintenance to the Lessor's property on the Premises which Lessor deems necessary or desirable (having due regard to the remaining term of this Lease and Lessor's future plans for the Premises). Lessee shall pay Lessor an amount for maintenance which will be passed on to Lessee as a double net expense as described in Article 4 and Exhibit A. Notwithstanding Lessor's maintenance obligations, Lessee has the primary obligation to keep the Premises safe for all persons. Accordingly, Lessee shall immediately notify Lessor if any portion of the Premises is in need of maintenance by Lessor and shall perform any necessary interim maintenance to keep the Premises in a safe condition until such time as Lessor is able to do so within a reasonable time after receipt of notice from Lessee.  If Lessee fails to perform its maintenance obligations, Lessor may perform those maintenance obligations and will charge to Lessee, in addition to Lessee's maintenance expense as described in Article 4 and Exhibit A, Lessor's actual cost in performing the same.  If Lessee fails to provide Lessor with any required notice relating to the maintenance of the Premises, Lessee shall be solely responsible for any resulting injury or damage.

9.    **ALTERATIONS.**

(a)    <u>Lessor's Alterations.</u>  Except to the extent limited by applicable Law, Lessor may, from time to time, make Alterations to the Premises.  The Alteration work may include, without limitation, the modernization, reconstruction, or remodeling of the buildings, improvements, or equipment on the Premises and may involve the complete demolishing and rebuilding of the same. Lessor shall exercise due diligence to complete the Alteration in an expeditious manner.  If Lessee's business is substantially disrupted or changed as a result of the Alteration work, Lessor will not be liable to Lessee for any loss including loss of profit resulting from the conduct of the work or completion delay except that Lessor shall reduce or suspend the rent payable by Lessee during the Alteration work period.  Notwithstanding anything contained in this Lease, Lessor has no obligation to make any Alterations.  Further the decision to make any Alteration on the Premises is in the sole discretion of the Lessor and a determination to alter the Premises is not final until all approvals and permits are received and construction begins.  Lessee shall not rely on any discussions regarding Alterations or any review of plans or documents as an agreement or promise with respect to any such potential Alterations.

(b)    <u>Lessee's Alterations.</u>    With the exception of Lessee's maintenance obligations identified in Article 8 and Exhibit B, or the installation of (1) any equipment made pursuant to Article 11, (2) state emission testing equipment or (3) carwash equipment that meets Lessor's specifications, Lessee may not make any Alteration to the Premises.  If Lessee installs any of the equipment permitted under this article, Lessee shall execute Lessor's standard form Alteration Agreement.  .

10.    **RELEASE DETECTION AND INVENTORY CONTROL.**

(a)    To assure early detection of any release from the UST system on the Premises, Lessee shall use a method or combination of methods of release detection in accordance with Lessor's procedures, as may be amended by Lessor from time to time, and applicable Law.  If Lessor amends these procedures, Lessor shall provide Lessee with written notice of the same.  Lessee shall also maintain a methodical daily inventory control program for motor fuel, including daily reconciliation of inventory readings with sales records and delivery receipts in accordance with Lessor's procedures and applicable Law.  Lessee shall provide Lessor with immediate notice by telephone (promptly confirmed in writing) of any suspected release, of any claim or threatened claim by any third party related to a release or alleged release, or of any newly discovered material fact relating to any matter previously reported pursuant to this article.  Without limiting the generality of the foregoing, Lessee shall provide Lessor with notice by telephone (promptly confirmed in writing) of any inventory discrepancy for a single product (loss or gain) in excess of:  (1) 300 gallons for a single day; (2) 150 gallons per day for 3 consecutive days; or (3) 1% of sales plus 130 gallons for any 30-day period.  Lessor may, from time to time, require Lessee to provide Lessor periodic written certifications that Lessee has complied with the provisions of this article.

(b)    Lessee shall comply with all recordkeeping requirements of Lessor and applicable Law.  Lessee shall retain for at least 3 years from the date of each sale of the motor fuel to Lessee's customers, and make available for Lessor's inspection and audit at all reasonable times, Lessee's records and procedures maintained in accordance with this article.

- 5 -

(c)    If Lessee fails to perform in a proper and timely manner Lessee's obligations under this article, in addition to any other rights or remedies Lessor may have under this Lease or Law, Lessor may retain the services of a qualified independent third party to inspect and audit Lessee's performance as frequently as necessary, at Lessee's sole expense, until such deficiencies are cured.

**11.    SECURITY.** Lessee shall be solely responsible for the security at the Premises and shall operate and maintain the Premises in a secure manner so that criminal activity is adequately deterred from occurring at the Premises and all persons are adequately protected from injury, harm, or loss. Any security measures and devices not existing on the Premises at the time of execution of this Lease, including, but not limited to, pass-through drawers, bullet resistant enclosures, mirrors, locks, alarm systems, camera systems deemed necessary by Lessee to meet Lessee's obligations under this article must be purchased, installed, and maintained at Lessee's sole discretion and expense.

**12.    RIGHT OF ENTRY.** Lessor, its agents, and representatives may enter the Premises at all reasonable times to inspect the Premises, perform any maintenance, make Alterations, and verify Lessee's compliance with this Lease.

**13.    EXCUSES FOR NONPERFORMANCE.** Both parties will be excused from their obligations under this Lease (except for financial obligations) to the extent that performance is delayed or prevented by any of the following matters: circumstances reasonably beyond the parties' control including, but not limited to, flood, ice storm, snowstorm, or earthquake; fire or explosion; delay or loss of transportation or delivery equipment; mechanical breakdown; strikes or other labor trouble, plant shutdown, riots, or other civil disturbances; or voluntary or involuntary compliance with any Law or request of any governmental authority.

**14.    INDEMNITY.**

(a)    TO THE EXTENT PERMITTED BY LAW, LESSEE SHALL INDEMNIFY AND DEFEND LESSOR, ITS MEMBERS, SUBSIDIARIES, AFFILIATES AND JOINT VENTURE PARTNERS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS ("INDEMNIFIED PARTIES") AGAINST ALL CLAIMS, DEMANDS, CAUSES OF ACTION, SUITS, DAMAGES, JUDGMENTS, LIENS, PENALTIES, AND EXPENSES INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND LITIGATION COSTS, WHETHER INCURRED FOR AN INDEMNIFIED PARTY'S PRIMARY DEFENSE OR FOR ENFORCEMENT OF ITS INDEMNIFICATION RIGHTS (COLLECTIVELY, "CLAIM"), INCLUDING, WITHOUT LIMITATION, ANY CLAIM FOR HARM, INJURY, OR DEATH TO ANY PERSON, OR DAMAGE TO PROPERTY OR TO THE ENVIRONMENT ARISING OUT OF OR IN CONNECTION WITH ANY OF THE FOLLOWING MATTERS:

(1)    LESSEE'S PERFORMANCE OR NONPERFORMANCE UNDER THIS LEASE;

(2)    ANY ACTION OR OMISSION OF LESSEE, LESSEE'S EMPLOYEES, AGENTS, CONTRACTORS, ASSIGNS OR THIRD PARTIES; AND

(3)    THE OPERATION OF LESSEE'S BUSINESS.

LESSEE'S OBLIGATION TO INDEMNIFY AND DEFEND EXTENDS TO ANY CLAIM CAUSED BY THE CONCURRENT OR CONTRIBUTORY NEGLIGENCE OR FAULT OF AN INDEMNIFIED PARTY BUT NOT TO ANY CLAIM SHOWN BY FINAL NONAPPEALABLE JUDGMENT TO HAVE BEEN CAUSED BY THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE.

(b)    WITHIN 24 HOURS AFTER THE OCCURRENCE OF WHICH MAY RESULT IN A CLAIM, LESSEE SHALL REPORT THE SAME TO LESSOR BY TELEPHONE AND SHALL PROMPTLY THEREAFTER CONFIRM THE SAME BY WRITTEN NOTICE, INCLUDING ALL CIRCUMSTANCES THEREOF KNOWN TO LESSEE OR LESSEE'S EMPLOYEES.

(c)    PROMPTLY AFTER RECEIVING NOTICE, AT LESSEE'S EXPENSE, LESSEE SHALL INVESTIGATE, RESPOND TO, AND DEFEND ANY CLAIM ASSERTED AGAINST ANY INDEMNIFIED PARTY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ALLEGING THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE. THE INDEMNIFIED PARTY MAY PARTICIPATE IN THE DEFENSE AND SETTLEMENT OF ANY CLAIM OR LITIGATION WITH ATTORNEYS OF THE INDEMNIFIED PARTY'S SELECTION WITHOUT RELIEVING LESSEE OF ANY OBLIGATIONS UNDER THIS ARTICLE. LESSOR SHALL REIMBURSE LESSEE FOR

Rev 2002/10/24 (Ret055)
Retail Facility Lease

**THE AMOUNT OF ANY JUDGMENT AND REASONABLE DEFENSE COSTS PAID BY LESSEE WHICH REPRESENTS THE TOTAL LIABILITY FOUND BY FINAL NONAPPEALABLE JUDGMENT TO HAVE BEEN CAUSED BY THE INDEMNIFIED PARTY'S SOLE NEGLIGENCE.**

(d)    **THE INSURANCE REQUIREMENTS OF ARTICLE 15 DO NOT LIMIT OR RESTRICT IN ANY WAY LESSEE'S OBLIGATIONS UNDER THIS ARTICLE.**

(e)    **LESSEE'S OBLIGATIONS UNDER THIS ARTICLE SURVIVE TERMINATION OR NONRENEWAL OF THIS LEASE.**

**15.    INSURANCE.**

(a)    Lessee shall maintain, at its sole cost, at all times during the term of this Lease, the following insurance coverage with providers satisfactory to Lessor with limits not less than those limits below (the "Insurance"):

(1)    Garage Insurance with limits of $1,000,000 each occurrence and $1,000,000 general aggregate and Garagekeepers Legal Liability Insurance with a limit of $50,000 each occurrence, such policy to include endorsement GL 20 10 Broadened Coverage, with Fire Legal Liability limits of $300,000 each occurrence. Lessees owning or operating up to and including 3 locations are subject to the minimum limits above. Lessees owning or operating 4 up to and including 5 locations shall amend their Garage policy aggregate to $3,000,000. Lessees owning or operating 6 or more locations shall amend their Garage policy aggregate to $5,000,000. In lieu of amending aggregate limits as described in this article, endorsement CG 2504 or its equivalent amending aggregate limits per location may be utilized when applied to the above described minimum limits. Limits in excess of $1,000,000 may be provided by Excess or Umbrella Liability coverage. This Insurance is only required for those locations engaged in automotive repairs, and should be used in lieu of Commercial General Liability insurance in Article 15(a)(2) below. As applicable, Lessee shall maintain the following:

(i)    Liquor Liability Insurance if Lessee owns or operates the location and alcoholic beverages are sold at the location, utilizing endorsement CG 24 08 or its equivalent.

(ii)    Marine Terminal or Wharfingers Liability Insurance if Lessee operates a marine facility. If Lessee supplies the marine facility via watercraft the watercraft exclusion must be deleted or equivalent coverage purchased.

(2)    Commercial General Liability Insurance unamended or Comprehensive General Liability Insurance with Broad Form CGL endorsement with limits of $1,000,000 each occurrence and $1,000,000 general aggregate, with Fire Legal Liability limits of $300,000 each occurrence. Lessees owning or operating up to and including 3 locations are subject to the minimum limit above. Lessees owning or operating 4 up to and including 5 locations shall amend their policy aggregate to $3,000,000. Lessees owning or operating 6 or more locations shall amend their policy aggregate to $5,000,000. In lieu of amending aggregate limits as described in this article, endorsement CG 2504 amending aggregate limits per location may be utilized when applied to the above-described minimum limits. Limits in excess of $1,000,000 may be provided by Excess Liability or Umbrella Liability coverage. As applicable, Lessee shall maintain the following:

(i)    Liquor Liability Insurance if Lessee owns or operates the location and alcoholic beverages are sold thereon, utilizing endorsement CG 24 08 or its equivalent.

(ii)    Marine Terminal or Wharfingers Liability Insurance if Lessee operates a marine facility. If Lessee supplies the marine facility via watercraft the watercraft exclusion must be deleted or equivalent coverage purchased.

(3)    Business Automobile Liability Insurance covering all vehicles used in the operations of the Lessee with limits of liability of: Bodily injury $1,000,000 each person, $1,000,000 each accident; Property damage $1,000,000; or a Combined Single Limit of  $1,000,000 for bodily injury and property damage, such policy to be endorsed with MCS-90 when hazardous material transportation is involved.

(4)    Workers' Compensation Insurance and Longshoremen's' and Harborworkers' Compensation Insurance as required by Laws applicable to and covering employees of Lessee during the term of this Lease.

Rev 2002/10/24 (Ret055)
Retail Facility Lease

(5)    Employers' Liability Insurance protecting Lessee against common law liability, in the absence of statutory liability, for employee bodily injury arising out of the master-servant relationship with a limit of $500,000 Each Accident, $500,000 Disease-Policy Limit; $500,000 Disease-Each Employee.

(b)    Lessee shall assure that the Insurance policies: (1) provide a waiver of subrogation in favor of Lessor where permissible by Law, (2) allow for the separation of insureds, and (3) provide for written notice of cancellation or material change. Notice of cancellation or change will not affect the Insurance until 30 days after Lessor receives written notice. Any deductible or retention of insurable risks will be for the Lessee's account.

(c)    Lessee shall assure the Insurance required in this article and each certificate evidencing the Insurance issued to Lessee names Lessor and its members, subsidiaries, affiliates and joint venture partners, to the extent of their interest, and, where applicable, Lessor's landlord and any mortgagee, as additional insureds (Article 15(a)(1) and (2) as applicable), without regard to the allocation of liability provisions contained in this Lease, to the extent of any claim, loss or liability within the scope of the required Insurance. The parties intend that, to the extent of their interest, the status of Lessor and its members, subsidiaries, affiliates and joint venture partners as additional insureds will not be limited. Lessee shall secure from its insurance companies and provide to Lessor, for all required Insurance (Article 15(a)(1) and (2) as applicable), an additional insured endorsement with terms equivalent to ISO Form CG 20 26 11 85.

(d)    At the time of execution of this Lease and during the term of this Lease as necessary, Lessee shall provide Lessor with a certificate of Insurance evidencing Lessee's compliance with Lessor's Insurance requirements. Lessee's failure to provide certificates evidencing the requirements or purchase Insurance coverage in compliance with this article will not relieve Lessee of its obligations in this article.

## 16.    CASUALTY LOSS AND DAMAGE.

(a)    Lessee shall comply with Lessor's Casualty Loss standards and procedures as may be amended by Lessor from time to time. If Lessor amends the standards and procedures, Lessor shall provide Lessee with notice. For the purpose of this article, "Casualty Loss" means any repair or replacement that needs to be made to the Premises as the result of damage or vandalism caused by: (1) any act or omission of any third party, including, without limitation, Lessee's customers, vendors, and contractors, or (2) an act of God.

(b)    Lessee is responsible for all damage to the Premises caused by Lessee's acts or omissions and shall make any repairs or replacements necessary, at Lessee's sole expense, as a result of such acts or omissions. If Lessee fails to make the repair or replacement, Lessor may do so and will charge Lessee for the same, which will be in addition to the Lessee's maintenance expense as described in Article 8.

(c)    Lessee shall reimburse Lessor for unrecovered Casualty Loss up to a maximum of the first $5000 (including taxes and the costs of collection) per incident. Lessor shall use its reasonable efforts to recover damages caused by Casualty Loss and Lessee shall cooperate with Lessor in doing so.

## 17.    ASSIGNMENTS, ENCUMBRANCES, AND RIGHT OF FIRST REFUSAL.

(a)    <u>Assignment by Lessee</u>.    This Lease is personal to Lessee. If Lessor elects not to exercise Lessor's right of first refusal as set forth below, Lessee may sell, transfer, encumber, or assign its interest under this Lease, in whole or in part, sublease any portion of the Premises, or permit any other person to occupy or use all or any part of the Premises, whether voluntarily, involuntarily, or by operation of Law (collectively, "Transfer") with the prior written consent of Lessor, which consent may be withheld consistent with applicable Law. Notwithstanding the foregoing, Lessee may only Transfer its interest under this Lease as it pertains to the operation of a motor fuel dispensing station or automobile service station, as the case may be, and any facilities for uses otherwise authorized under the RSA revert back to Lessor, at Lessor's sole discretion. Lessor's consent to Transfer may be conditioned upon, but not limited to, the (1) proposed transferee satisfying all of Lessor's then current requirements for the qualification of new lessees; (2) Lessee satisfying all indebtedness owed by Lessee to Lessor; and (3) proposed transferee agreeing to be bound by all the terms and conditions of this Lease. Lessor will have 60 days (or any lesser period specified by Law), after receipt of Lessee's request for Lessor's consent to Transfer and all qualification information reasonably required by Lessor, to provide Lessee with written notice of its decision to grant or withhold consent. Lessor's consent to Transfer is not a waiver of the provisions of this article as to any future transaction. Any Transfer by Lessee without Lessor's prior written consent is void.

(b)    <u>Trial Franchise</u>.    Except for retailers in California or otherwise to the extent limited by applicable Law, if Lessee desires to Transfer its interest in this Lease to an individual or Business Entity that has not previously operated as a lessee of:

- 8 -

(1) Lessor, (2) Lessor's affiliates, or (3) a major oil company authorized to sell the company's branded petroleum products within the 5 year period preceding the Effective Date of this Lease, then Lessee may be required to execute a mutual termination of this Lease and the proposed transferee may be required to execute a trial franchise lease as a condition to Lessor granting its consent to the Transfer.  For the purposes of this article, "major oil company" means an entity that is fully integrated with substantial interests in both upstream and downstream (specifically including refining) and markets in two or more regions.

(c)     Transfer Events.  Without limiting the generality of the foregoing, the following events constitute a Transfer:

(1)     Lessee dies and Lessee's interest in this Lease is transferred, whether by will or operation of Law;

(2)     Lessee becomes bankrupt or insolvent, Lessee makes an assignment for the benefit of creditors, or a proceeding is instituted under the Bankruptcy Code and, if it is an involuntary proceeding, Lessee or other affected party has not had it dismissed within 60 days;

(3)     A writ of attachment or execution is levied on this Lease and not removed by Lessee within 30 days;

(4)     A receiver is appointed with authority to take possession of the Premises and is not removed within 60 days in any proceeding or action to which Lessee is a party;

(5)     If Lessee is a limited liability partnership or partnership, a withdrawal or any change of interest (voluntary, involuntary, or by operation of Law) of any partner or the dissolution of the partnership;

(6)     If Lessee is a limited liability company or a corporation, any dissolution, merger, consolidation or other reorganization, or other arrangement having similar effect, or the sale or transfer by Lessee or any member or shareholder of 10% or more of the voting shares of the capital stock of Lessee or of any lesser interest which cumulatively vests 10% or more of such voting shares in the transferee; and

(7)     If Lessee is comprised of more than one person, any change of interest (voluntary, involuntary or by operation of Law) of any such person.

(d)     Right of First Refusal.     Lessee may not Transfer any of Lessee's interest in this Lease without first offering, in writing, to Transfer the same to Lessor or its designee on the same terms and conditions expressly agreed to between Lessee and the third party ("Transferee").  Lessor will have 30 days after receipt of the offer and a complete and exact copy of the agreement with the Transferee to accept or reject the offer.  If Lessor rejects the offer and consents to the Transfer as set forth in Article 17(a), Lessee may make the proposed Transfer to the third party, but not at a lower price or on more favorable terms than those offered to Lessor.  If such Transfer is not consummated within 4 months from the expiration of the 30-day period, Lessee shall re-offer the interest to Lessor in accordance with the foregoing provisions.

(e)     Transfer Fee.

(1)     Except for lessees in New Hampshire or Virginia which will be governed by applicable state Law, to the maximum extent permitted by Law, Lessee shall pay to Lessor a franchise transfer fee ("Transfer Fee") in the form of a bank cashiers check prior to or at the closing of any Transfer.  With the exception of a Transfer in the event of Lessee's death, long term disability, or sickness (6 months or more) that prevents Lessee from operating the business at the Premises, the Transfer Fee is applicable to all Transfers, including a Transfer to the Lessor.

(2)     For purposes of calculating the Transfer Fee as set forth below, the "Gross Sales Price" is the value of any consideration received excluding the value of the inventory and equipment.  At the time of closing, the transferee and Lessee shall execute an Affidavit of Consideration certifying the Gross Sales Price and assigning values to the equipment and inventory based on the last invoice from Lessor for the motor fuel and retail cost for the other inventory.  If Lessor, in the exercise of reasonable judgment, disagrees with the equipment values, Lessor may require that the transferee obtain an appraisal of the equipment.  Lessor shall provide the transferee with the names of 3 Member Appraisal Institute (M.A.I.) appraisers.  If the appraised value on the equipment is greater than or equal to the assigned value by the transferee, Lessor shall pay for the appraisal.  If the appraised value of the equipment is less than the assigned value, the transferee shall pay for the appraisal.  The appraisal will be conclusive for establishing the value of the equipment.

Rev 2002/10/24 (Ret055)
Retail Facility Lease

(3)    With the exception of a Transfer by Lessee's Designee as defined in the RSA, the amount of the Transfer Fee will be the greater of $6500 or the amount arrived at by multiplying the **difference** between the baseline Gross Sales Price (the price Lessee paid for the franchise originally) and the Gross Sales Price for the current Transfer by the applicable percentage below (which is based upon Lessee's tenure at the Premises as of the date of the Transfer).

        (i)    Less than 3 years at 35%
        (ii)   3 years to less than 6 years at 20%
        (iii)  6 years to less than 9 years at 15%
        (iv)   9 years or more at 0%

For any Transfer by Lessee's Designee, the Transfer Fee will be $6500.

(f)    <u>No Liens.</u>    Except to the extent permitted under this article, Lessee shall keep the Premises and Lessee's interest in this Lease free and clear of all liens, claims, or other encumbrances. Lessee shall discharge any mechanic's, laborer's, or materialman's lien on account of labor, materials, or services performed or supplied to Lessee, or any security agreement, conditional bill of sale, chattel mortgage, or other agreement on account of personal property furnished or leased to Lessee. Lessee shall reimburse Lessor for any costs and expenses, including attorneys' fees and costs, which are incurred as a result of the violation of the provisions of this article.

(g)    <u>Assignment by Lessor.</u>    Lessor may Transfer its interest, in whole or in part, in this Lease or in the Premises.

### 18.    TERMINATION OR NONRENEWAL.

(a)    <u>Termination by Lessor.</u>    Subject to any limitations imposed by Law, and in addition to all other rights or remedies available, Lessor may terminate this Lease for any of the following grounds.

(1)    Lessee's failure to comply with any provision of this Lease, which provision is both reasonable and of material significance to the relationship under this Lease;

(2)    Lessee's failure to exert good faith efforts to carry out the provisions of this Lease;

(3)    The occurrence of an event which is relevant to the relationship under this Lease and as a result of which termination of this Lease is reasonable, including, without limitation, the following events:

        (i)    Lessee's fraud or criminal misconduct relevant to the operation of the Premises;

        (ii)   Lessee's declaration of bankruptcy or judicial determination of insolvency;

        (iii)  Lessee's continuing severe physical or mental disability if Lessee is an individual, or if Lessee is a partnership or corporation, the disability of any individual who is currently in "control" of the ownership interest of Lessee ("control" being the authority to direct the operations of Lessee and to have or exercise management responsibility), of at least 3 months' duration that renders Lessee unable to provide for the continued proper operation of the Premises;

        (iv)   Loss of Lessor's right to grant possession of the Premises through expiration of an underlying lease;

        (v)    Condemnation or other taking, in whole or in part, of the Premises pursuant to the power of eminent domain;

        (vi)   Destruction (other than by Lessor) of all or a substantial part of the Premises;

        (vii)  Lessee's failure to pay Lessor in a timely manner when due rent and all other sums to which Lessor is legally entitled, including, without limitation, any sums due Lessor under the RSA or any other agreement entered into between the parties;

Rev 2002/10/24 (Ret055)
Retail Facility Lease

(viii)    Lessee's failure to operate the Premises for 7 consecutive days, or such lesser period which under the facts and circumstances constitutes an unreasonable period of time;

(ix)    Lessee's willful adulteration, mislabeling, or misbranding of motor fuels or other trademark violations;

(x)    Lessee's knowing failure to comply with the Laws relevant to the operation of the Premises;

(xi)    Lessee's conviction of any felony involving moral turpitude;

(xii)    Lessee's death if Lessee is an individual, or if Lessee is a partnership or corporation, the death of any individual who is currently in "control" of the ownership interest of Lessee ("control" being the authority to direct the operations of Lessee and to have or exercise management responsibility); and

(4)    A determination is made by Lessor in good faith and in the normal course of business to withdraw from marketing of motor fuel through retail outlets in the relevant geographic market area in which the Premises are located;

(5)    Termination of the RSA; or

(6)    Any other ground for which termination is provided for in this Lease or is otherwise allowed by the PMPA or other applicable Law.

(b)    Termination Prior to Effective Date.    If after execution but prior to the Effective Date of this Lease Lessor has grounds to terminate or not renew any then existing Retail Facility Lease between the parties, or to terminate this Lease as if it were then in its term, Lessor may terminate this Lease, as well as any existing Retail Facility Lease, based on those grounds.

(c)    Nonrenewal by Lessor.    Subject to any limitations imposed by Law, and in addition to all other rights or remedies available, Lessor may not renew this Lease for any of the following grounds.

(1)    Any of the grounds specified in Article 18(a);

(2)    Nonrenewal of the RSA; or

(3)    Any other ground for which nonrenewal is provided for in this Lease or is otherwise allowed by the PMPA or other applicable Law.

(d)    Termination for Changed Laws.    Lessor may terminate this Lease, upon notice to Lessee, if any Law operates to prevent the continued use or occupancy of the Premises (either directly or by requiring an Alteration at a cost which is disproportionate to the value of the Premises for the continued use or occupancy) for the purpose for which the Premises were being used immediately prior to the effective date, application, or enforcement of the Law, as the case may be.

(e)    Mutual Termination.    The parties may terminate or not renew this Lease by mutual written agreement in the form and manner permitted by the PMPA.

(f)    Repudiation of Prior Lessee's Mutual Termination.    Lessor and Lessee may have executed this Lease prior to the actual Effective Date of this Lease to provide Lessee early possession of the Premises. In consideration thereof, Lessee acknowledges that Lessor may terminate this Lease immediately upon notice to Lessee if the existing (or prior) lessee at the Premises repudiates the mutual termination agreement executed by that lessee and Lessor within the period provided under the PMPA.

## 19.    RIGHTS AND DUTIES UPON TERMINATION OR NONRENEWAL.

(a)    Upon termination or nonrenewal of this Lease, Lessee shall peaceably surrender the Premises to Lessor. The Premises must be surrendered to Lessor in as good condition as when received, ordinary wear and tear excepted. If necessary, Lessor may re-enter and repossess the Premises without affecting any other rights or remedies available to Lessor under this Lease or otherwise.

Rev 2002/10/24 (Ret055)
Retail Facility Lease

(b)    If Lessee fails to remove any of Lessee's property upon termination or nonrenewal of this Lease such property will be deemed abandoned and Lessor may dispose of Lessee's property without recourse.

(c)    In addition to Lessor's rights under Article 19(b), Lessor will be entitled to compensation, as liquidated damages and not as a penalty, in the amount of $300.00 per day from Lessee from the date of termination or nonrenewal of this Lease until the date of final removal of Lessee's property and restoration of the Premises by Lessor or Lessee, as the case may be.

20.    **UNDERLYING LEASE.** If indicated in PART I that Lessor does not own the Premises the following provisions apply.

(a)    Lessee acknowledges that Lessor does not own the land and may or may not own the improvements covered by this Lease but leases the land from a third party under an underlying lease that will expire as specified in PART I. Lessee is also notified that, upon expiration, Lessor's underlying lease may not be extended or renewed on that date, with the result that this Lease may be terminated prior to, or not renewed at, the end of the term. If Lessor's underlying lease is extended or renewed beyond the date stated in PART I, then this Lease will continue in effect or be renewed, as the case may be, provided other grounds for termination or nonrenewal do not then exist.

(b)    This Lease is subject to all conditions and restrictions affecting the underlying lease under which Lessor is now or hereafter entitled to possession. Lessee shall not commit or permit any act or omission that would impair or jeopardize Lessor's interest under the underlying lease.

21.    **CONDEMNATION.** If all or any part of the Premises is condemned for public or quasi-public use, or if Lessor agrees to execute a voluntary conveyance in lieu of condemnation, either party may terminate this Lease by giving the other prior notice. Lessor, not Lessee by virtue of this Lease, will be entitled to any condemnation award or payment in exchange for a voluntary conveyance, and Lessee assigns to Lessor all of Lessee's right to or interest in any award or settlement subject to any applicable requirements of the PMPA. Nothing in this Lease, however, precludes Lessee from pursuing a claim Lessee may have directly against the condemning authority under applicable Law to receive compensation for business relocation expense or for loss of business opportunity or good will. If this Lease is not terminated because less than all of the Premises is condemned, the condemnation will not affect the obligation of Lessee to pay the full rental and to perform all of Lessee's obligations under this Lease.

22.    **LESSEE'S INDEPENDENCE.** Lessee is an independent businessperson, and nothing in this Lease may be construed as reserving to Lessor any right to exercise any control over, or to direct any respect the conduct or management of, Lessee's business or operations conducted pursuant to this Lease; but the entire control and direction of such business and operations are and will remain in Lessee, subject only to Lessee's performance of the obligations of this Lease. Neither Lessee nor any person performing any duties or engaged in any work at the Premises for or on behalf of Lessee will be deemed an employee or agent of Lessor, and none of them is authorized to impose on Lessor any obligations or liability whatsoever.

23.    **BUSINESS ENTITY OR JOINT LESSEE.**

(a)    If Lessee is comprised of more than one person, the obligations imposed under this Lease are joint and several as to each person and all of the terms apply to each person with the same effect as though that person were the sole Lessee.

(b)    If Lessee is a Business Entity, all obligations under this Lease of a personal nature apply as if the Business Entity were an individual and, insofar as is legally possible and reasonably practicable, to those individuals who have or exercise management responsibility for the Business Entity, including, but not limited to, officers, directors or agents of corporations and partners of partnerships. The Business Entity must manage its affairs with respect to the personal obligations in a manner so as to give full force and effect to the same. If Lessee is a Business Entity, Lessee shall designate a Key Management Person (subject to Lessor's prior approval) as identified in PART I to exercise primary management responsibility for Lessee's day-to-day operations. Lessor may look to the Key Management Person in connection with the performance of the personal obligations. Lessee may change Lessee's Key Management Person upon Lessor's prior written approval.

24.    **ACTS ATTRIBUTABLE TO LESSEE.** The acts or omissions of Lessee's employees and agents are the acts or omissions of Lessee. If Lessee is comprised of more than one person the acts or omissions of each such person are the acts or omissions of Lessee. If Lessee is a Business Entity, in addition to those persons mentioned above, the acts or omissions of the Key Management Person designated in PART I and of each partner, shareholder or member, as the case may be, will be considered the acts or omissions of Lessee.

- 12 -

**25.    NOTICES:**

(a)    Except as otherwise specified in this Lease, all notices must be in writing and in compliance with the PMPA and other applicable Law.  Subject to any requirements of Law, any notice may be given to Lessee by personal service or by electronic mail or to either party by certified mail, regular mail, telegram, facsimile, mailgram, or overnight or local courier. Notice will be deemed given when: (1) deposited in the U.S. Mail, postage or charges pre-paid and directed to the party for whom intended at the address in this Agreement or such other address as directed by the party upon written notice to the other if given by certified mail or regular mail; (2) deposited with the dispatching agency, postage or charges pre-paid and directed to the party for whom intended at the address in this Agreement or such other address as directed by the party upon written notice to the other if given by telegram, mailgram or overnight or local courier; (3) confirmation is received by the sending party if given by facsimile; or (4) Lessor is electronically notified by its electronic mail provider or program of delivery to Lessee if given by electronic mail.

(b)    If Lessee is a Business Entity, Lessor may give notice to: (1) the Key Management Person; (2) any officer or director of a corporation or limited liability company; (3) any partner of a partnership or limited liability partnership; or (4) any personal representative, agent, or employee of any other Business Entity.

(c)    To enable Lessor to send notices and communications to Lessee by electronic mail:  (1) Lessee's computer must be configured in accordance with Lessor's specifications in effect from time to time; (2) Lessee must have access to the internet; and (3) Lessee shall have at all times during the term of this Lease an active E-mail address and Lessee shall promptly advise Lessor of such address and of any change thereto.

**26.    CLAIMS.**  Except for claims relating to indemnification obligations under this Lease, to indebtedness, or as otherwise specified in this Lease the parties will not be liable to each other for any other claim arising out of this Lease unless the claimant provides the other party with written notice of the claim (setting forth fully the facts on which the claim is based) within 180 days after the date on which the claim arose.

**27.    ATTORNEY'S FEES.**  The prevailing party will be entitled to recover from the other party reasonable attorney's fees and other legal costs the party incurs in order to secure, defend or protect the rights inuring to the prevailing party under this Lease, or to enforce the terms thereof.

**28.    GENERAL PROVISIONS.**

(a)    This Lease as of the Effective Date hereof cancels and supersedes all prior and contemporaneous representations, inducements, agreements, commitments, and undertakings with respect to the subject matter of this Lease, except those written agreements relating to any indemnification, reimbursement, indebtedness, or debt security obligations (including, but not limited to, any security interest, security agreement, guaranty, mortgage, deed of trust, promissory note, or UCC filing).

(b)    Except as expressly provided under this Lease, this Lease may be amended or supplemented only in a writing signed by both parties.

(c)    Any waiver of any provision of this Lease must be in writing signed by the parties.  Delay or failure by either party of its right to enforce any provision of this Lease, and course of dealing, or trade custom or usage will not operate as a waiver of compliance with that provision or a waiver or estoppel of the party's right to enforce any other provision of this Lease.

(d)    The provisions of this Lease are severable.  If any provision of this Lease is, for any reason, invalid or unenforceable, the remaining provisions of this Lease are valid and enforceable if the basic intent of the parties is still capable of being achieved.

(e)    This Lease is binding upon and enforceable against the parties' respective successors, permitted assignees, legal representatives, executors, administrators, heirs, and legatees.

(f)    Neither this Lease nor any subsequent agreement amending or supplementing this Lease is binding on Lessor unless a duly authorized representative of Lessor signs the Lease, amendment, or supplement.

(g)    For the purpose of Articles 28 (b), (c) and (f), signatures and writings in an electronic form do not constitute or create a writing signed by a party.

Rev 2002/10/24 (Ret055)
Retail Facility Lease

## Exhibit A

### Double Net Monthly Rental Expenses

| | | |
|---|---|---|
| Maintenance | Months 1-12: | $1,282.00 |
| | Months 13-24: | $1,321.00 |
| | Months 25-36: | $1,360.00 |

Ad Valorem Taxes:                    $652.00

Rev 2002/10/24 (Ret055)
Retail Facility Lease

**Exhibit B**
**Lessee's Maintenance Obligations**

A.    **Yard**

1.    Maintain, including replacement as necessary, all landscaping as necessary to retain a healthy and attractive appearance. Items include, but are not limited to, all live and artificial plantings (shrubs, grass, flowers, trees, etc.), decorative rock, mulch and bark.

2.    Repair or replace, as necessary, the entire yard sprinkler system, including, but not limited to, timers, backflow preventers (see Plumbing section), heads, piping, and rain sensors. Lessee shall drain system as necessary to prevent from freezing.

3    Regularly remove weeds, leaves, debris and litter from the Premises (including adjacent sidewalks, driveways and easements).

4.    Remove snow and ice from the Premises (including adjacent sidewalks, driveways and easements).

B.    **Lighting - Interior**

Repair or replace, as necessary, all lamps and bulbs, neons, transformers, ballasts, ballast wiring, starters, reflectors, lenses, grilles and sockets in the interior of all buildings.

C.    **Plumbing**

1.    Clear clogged toilets, sinks, building lube bay drains and on-property sewer lines. Clean oil separators and catch basins.

2.    Repair or replace, as necessary, all flush mechanisms and faucets (excluding those in public restrooms).

3.    Drain water lines to prevent freezing.

4.    Empty septic tanks, water reclaim tanks for carwash and cesspools as necessary. Empty and clean yard catch basins as necessary.

5.    Repair or replace, as necessary, all hose bibbs.

6.    Repair or replace, as necessary, all backflow preventers. Pay for and have performed periodic testing of backflow preventers as required by regulating authority.

7.    Repair or replace, as necessary, water wells and pumps. Excludes drilling of a new water well.

8.    Repair or replace, as necessary, all water heaters.

D.    **Heating/Air Conditioning**

1.    Repair or replace, as necessary, all components of heating and air conditioning system including, but not limited to, filters, controls, condensers, compressors, and wiring. Excludes total system replacement except for window/wall units. Provide seasonal preventive maintenance as required, but at least annually. System types include, but are not be limited to, forced air, hot water, steam, radiant, car wash entrance/exit mat or window/wall units.

2.    Repair or replace, as necessary, all components of swamp coolers, including total system replacement.

Rev 2002/10/24 (Ret055)
Retail Facility Lease

**E.**     **Glasswork**

Repair or replace, as necessary, all window and door glass, whenever scratched, cracked or broken from whatever cause. Includes bullet-resistant glass or plastic.

**F.**     **Floors**

Restore floors to original condition upon removal of equipment installed by or at request of Lessee, subject to normal wear and tear.

**G.**     **Painting**

During the interval between periodic general repainting by Lessor, wash and paint all curbs, yard and building equipment, lifts, interior/exterior walls, doors, ceilings and shelving as necessary.  Lessor shall furnish paint that meets Lessor's specifications.

**H.**     **Tanks**

1.     Check underground motor fuel storage tanks daily for water in accordance with Lessor's procedures.

2.     Empty waste oil tank as necessary using legally acceptable method of disposal.

3.     Pump out and dispose of water in waste oil or heating oil tank as required using legally acceptable method of disposal.

4.     Keep fills and access boxes clear of ice, snow, water and debris.

**I.**     **Pumps/Dispensers**

1.     Lubricate any motor fuel suction pumps in use (where motor and pump are contained in dispenser housing). Lubricate suction pump weekly or per manufacturer's recommendations.

2.     Repair or replace, as necessary, all hanging hardware for fuel pumps or dispensers.  Hanging hardware includes, but is not limited to, whip hoses, breakaways, flow restrictors in the hose assembly, hoses, nozzles, nozzle spouts, swivels, splash guards, clamps, or scuff guards, including any associated with a vapor recovery system.   Lessee's Maintenance obligations under this provision requires Lessee to immediately replace any hanging hardware that causes the fueling system to fail regulatory compliance testing. Check daily for visible leaks.

**J.**     **Air Compressor**

Repair or replace, as necessary, all components of air compressors for service bay, car wash bay/building or remote air stand including all add-on equipment such as filters, air dryers, separators, regulators, above ground piping, hoses, air nozzles, excluding total compressor replacement.

**K.**     **C-Store/Food Mart and Related Equipment (if located on Premises)**

1.     Repair or replace, as necessary, all components of cooler/freezer and refrigeration units (walk-in and freestanding), excluding total system replacement. Provide preventive maintenance as required, but at least annually.

2.     Repair or replace, as necessary all food accessories, including, but not limited to coffee makers, juice and soda dispensers, ice dispensers, microwaves, gondolas and all other C-store/food mart related equipment, including lamps, ballasts, fuses and glass therein.

3.     Keep all food handling equipment and food preparation areas clean, sanitary and in compliance with applicable Laws.

4.     Keep all equipment drain lines clean and clear.

Rev 2002/10/24 (Ret055)
Retail Facility Lease

**L.**    **Car Wash (if located on Premises)**

1.    Repair or replace, as necessary, all elements of car wash equipment, including any optional or add-on equipment with control and connection hardware, including, but not limited to, brushes, dryers, wheel scrubbers, undercarriage washers, foamers, conveyors, entrance keypads, consoles, cash/coin/token acceptors, and all elements of any water reclaim system. Perform preventive maintenance per manufacturers recommendations.

2.    Repair or replace, as necessary, all elements of overhead doors or curtains and their controls including, but not limited to, motors, sensors, electric eyes, tracks, pneumatic actuators, pneumatic cylinders, chains, springs, and door edge sensors.

3.    Car wash heating system (refer to Heating/Air Conditioning section).

4.    Car wash air compressor (refer to Air Compressor section).

5.    Car wash water reclaim tanks (refer to Plumbing section).

**M.**    **Fire Protection**

1.    Repair or replace, as necessary, dry chemical or liquid fire suppression/fire sprinkler equipment for fueling area and building including, but not limited to, sensors, bottles, heads, fuseable links, alarm/monitoring systems, cables, backflow preventers, above ground wiring, piping, and conduit. Replace and recharge system as necessary.

2.    Furnish and maintain portable fire extinguishers.

3.    Pay for and have performed period testing and inspection of fire suppression/fire sprinkler systems, and hand held extinguishers as required by regulating authority.

**N.**    **Other Equipment**

1.    Repair or replace, as necessary, all elements of oil and lube equipment and used oil pumps, including, but not limited to, hoses, fittings, spouts, meters, pumps, above ground piping, and overhead reels.

2.    Repair or replace, as necessary, all elements of interior and exterior video monitoring systems including those required by regulating authorities such as self-serve dispenser monitoring. Maintenance responsibility includes, but is not limited to, cameras, monitors, recorders, switching devices, cables, wires, and above ground conduit. Pay for and have performed periodic testing and inspection as required by any regulating authority.

3.    Repair or replace, as necessary, above ground and below ground safes.

4.    Repair or replace, as necessary, pass through drawers.

5.    Repair or replace, as necessary, all elements of interior and exterior intercom systems including those required by regulating authorities. Maintenance responsibility includes, but is not limited to, speakers, control panel, all wiring above surface grade, mounts, antennas, transmitters and receivers. Pay for and have performed periodic testing and inspection as required by any regulating authority.

**O.**    **Miscellaneous**

1.    Repair or replace, as necessary, all building locks and keys, latches for both interior and exterior doors and, in addition, door closers and hinges for interior doors.

2.    Repair or replace, as necessary, all elements of overhead doors, excluding total door replacement.

3.    Reset circuit breakers, replace electrical fuses.

4.    Keep restrooms at all times neat, clean, safe and orderly, free of offensive odors and well stocked with proper supplies and cleaning materials.

Rev 2002/10/24 (Ret055)
Retail Facility Lease

5.      Take all necessary pest control measures.

6.      Repair or replace, as necessary, all bay and C-store/food mart cabinets and shelving including, but not limited to, doors, hinges, knobs, levers, cup dispensers, and condiment racks.

7.      Maintain all paths of travel on the Premises free of obstruction and accessible in compliance with applicable accessibility law including but not limited to accessibility provisions of the Americans with Disabilities Act.

All repairs and replacements performed by the Lessee must meet or exceed the specifications of the existing equipment (e.g. a 5-horsepower air compressor must be replaced with a 5-horsepower air compressor), of equal quality, as well as comply with Lessor's image standards, if applicable.  If Lessee is unsure about a specific standard, Lessee should consult with Lessor.

Rev 2002/10/24 (Ret055)
Retail Facility Lease