

MOTIVA ENTERPRISES LLC
Contracts Department
Northborough Office
12700 Northborough Drive, MS1012
Houston, TX 77067
Fax: (281) 775-5060

Station Location  1050 Washington Street
Braintree, Massachusetts
Retailer Number  241835
Cost Center Number  137711

September 30, 2004

<u>CERTIFIED MAIL and PERSONAL DELIVERY</u>
<u>RETURN RECEIPT REQUESTED</u>

Mr Matthew D Herman
Lakeview Auto Care Inc
1050 Washington Street
Braintree, MA 02184

Re    Notice of Termination
      Retail Facility Lease and Retail Sales Agreement Both Effective June 1, 2003

Dear Mr Herman

Please refer to the Retail Facility Lease ("Lease") effective June 1, 2003, between Lakeview Auto Care Inc ("Retailer") and Motiva Enterprises LLC ("Motiva") covering the station located at 1050 Washington Street, in Braintree, Massachusetts ("Premises"), and the Retail Sales Agreement ("Agreement") effective the same date between Retailer and Motiva covering the sale and delivery by Motiva of Shell-branded products to Retailer at the Premises  In addition, please refer to Motiva's letter to Retailer dated September 7, 2004

This letter is formal notice to Retailer that Motiva intends to terminate the Lease and Agreement effective October 4, 2004 ("Effective Date"), on which date both instruments and the franchise relationship will end  The reason for this termination is Retailer's failure to operate the marketing Premises for seven (7) consecutive days

Motiva's representative has observed that Retailer has had no motor fuels available for sale and has not sold motor fuels at the Premises from at least September 22, 2004, up to and including the date of this notice  Retailer has not purchased gasoline from Motiva since September 15, 2004  Failure to operate the service station for seven consecutive days, or such lesser period which under the facts and circumstances constitutes an unreasonable period of time, is a grounds for which termination or nonrenewal is permitted under Sections 2802(b)(2)(C) and 2802(c)(9) of the Petroleum Marketing Practices Act, 15 U S C §2801 *et seq* ("PMPA"), and under Agreement Article 23(a)(3)(viii)

Article 5(d) of the Agreement also requires Retailer "to maintain a sufficient amount of all grades of Seller's branded gasoline     "  Therefore, in addition to the reason stated above, Retailer's failure to maintain a supply of Shell-branded motor fuel for resale to the public for seven consecutive days constitutes a failure to comply with a provision of the Agreement which is both reasonable and of material significance to the franchise relationship  This failure constitutes independent grounds for which termination or nonrenewal is permitted under Section 2802(b)(2)(A) of the PMPA

Please recall that by letter dated September 7, 2004, Motiva notified Retailer of the consequences of Retailer's continuing failure to operate the marketing Premises for the sale of motor fuel  Despite this prior notice and opportunity to cure, Retailer has again violated these material provisions of the Agreement and the franchise relationship  Therefore in addition to the foregoing grounds, termination of the Lease and Agreement and the franchise relationship thereunder is also justified based upon Retailer's failure to exert good faith efforts to carry out the provisions of the franchise, for

which termination is permitted pursuant to PMPA Section 2802(b)(2)(B)

The primary purpose of the Shell franchise granted to Retailer by Motiva is to sell Shell-branded gasolines at the Premises Retailer's failure to have motor fuels available for sale to the motoring public at all times is unreasonable and violates this fundamental purpose of the franchise relationship In addition, Retailer's inability or refusal to sell gasoline from the Premises damages the Shell brand in Retailer's area, both to the detriment of Motiva and the Shell brand itself, as well as other Shell-branded retailers Termination on less than ninety days' notice is therefore reasonable Motiva will take possession of the Premises on the Effective Date pursuant to Article 19(a) of the Lease

Enclosed is a Summary Statement of Title I of the Petroleum Marketing Practices Act ("Summary Statement") as prepared by the Department of Energy and published in the June 25, 1996 issue of the *Federal Register* (61 Fed Reg 32786-32790)

Very truly yours,

Shell Oil Products US,
for and on behalf of
Motiva Enterprises LLC

*[signature]*

Jim K Eaves
Supervisor Retail Contracts

Enclosure

Notice of Termination

Federal Register June 25, 1996 (Volume 61, Number 123)]
[Notices]
[Page 32786-32790]
From the Federal Register Online via GPO Access [wais access gpo gov]
[DOCID fr25jn96-58]

---

DEPARTMENT OF ENERGY

Revised Summary of Title I of the Petroleum Marketing Practices Act

AGENCY Department of Energy

ACTION Notice

---

SUMMARY This notice contains a summary of Title I of the Petroleum Marketing Practices Act, as amended (the Act) The Petroleum Marketing Practices Act was originally enacted on June 19, 1978, and was amended by the Petroleum Marketing Practices Act Amendments of 1994, enacted on October 19, 1994 On August 30, 1978, the Department of Energy published in the Federal Register a summary of the provisions of Title I of the 1978 law, as required by the Act The Department is publishing this revised summary to reflect key changes made by the 1994 amendments

The Act is intended to protect franchised distributors and retailers of gasoline and diesel motor fuel against arbitrary or discriminatory termination or nonrenewal of franchises This summary describes the reasons for which a franchise may be terminated or not renewed under the law, the responsibilities of franchisors, and the remedies and relief available to franchisees The Act requires franchisors to give franchisees copies of the summary contained in this notice whenever notification of termination or nonrenewal of a franchise is given

FOR FURTHER INFORMATION CONTACT Carmen Difiglio, Office of Energy Efficiency, Alternative Fuels, and Oil Analysis (PO-62), U S
Department of Energy, Washington, D C 20585, Telephone (202) 586-4444, Lawrence Leiken, Office of General Counsel (GC-73), U S Department of Energy, Washington, D C 20585, Telephone (202) 586-6978

SUPPLEMENTARY INFORMATION Title I of the Petroleum Marketing Practices Act, as amended, 15 U S C Secs 2801-2806, provides for the protection of franchised distributors and retailers of motor fuel by establishing minimum Federal standards governing the termination of franchises and the nonrenewal of franchise relationships by the franchisor or distributor of such fuel

Section 104(d)(1) of the Act required the Secretary of Energy to publish in the Federal Register a simple and concise summary of the provisions of Title I, including a statement of the respective

[[Page 32787]] responsibilities of, and the remedies and relief available to, franchisors and franchisees under that title. The Department published this summary in the Federal Register on August 30, 1978 43 F R 38743 (1978)

In 1994 the Congress enacted the Petroleum Marketing Practices Act Amendments to affirm and clarify certain key provisions of the 1978 statute Among the key issues addressed in the 1994 amendments are (1) termination or nonrenewal of franchised dealers by their franchisors for purposes of conversion to ``company'' operation, (2) application of state law, (3) the rights and obligations of franchisors and
franchisees in third-party lease situations, and (4) waiver of rights limitations See H R REP NO 737, 103rd Cong, 2nd Sess 2 (1994), reprinted in 1994 U S C C A N 2780 Congress intended to (1) make

Notice of Termination

explicit that upon renewal a franchisor may not insist on changes to a franchise agreement where the purpose of such changes is to prevent renewal in order to convert a franchisee-operated service station into
a company-operated service station, (2) make clear that where the franchisor has an option to continue the lease or to purchase the premises but does not wish to do so, the franchisor must offer to assign the option to the franchisee; (3) make clear that no franchisor may require, as a condition of entering or renewing a franchise agreement, that a franchisee waive any rights under the Petroleum Marketing Practices Act, any other Federal law, or any state law; and (4) reconfirm the limited scope of Federal preemption under the Act Id

The summary which follows reflects key changes to the statute resulting from the 1994 amendments The Act requires franchisors to give copies of this summary statement to their franchisees when entering into an agreement to terminate the franchise or not to renew the franchise relationship, and when giving notification of termination or nonrenewal This summary does not purport to interpret the Act, as amended, or to create new legal rights

In addition to the summary of the provisions of Title I, a more detailed description of the definitions contained in the Act and of the legal remedies available to franchisees is also included in this notice, following the summary statement

Summary of Legal Rights of Motor Fuel Franchisees

This is a summary of the franchise protection provisions of the Federal Petroleum Marketing Practices Act, as amended in 1994 (the Act), 15 U S C Secs 2801-2806 This summary must be given to you, as
a person holding a franchise for the sale, consignment or distribution of gasoline or diesel motor fuel, in connection with any termination or nonrenewal of your franchise by your franchising company (referred to
in this summary as your supplier)
You should read this summary carefully, and refer to the Act if necessary, to determine whether a proposed termination or nonrenewal of your franchise is lawful, and what legal remedies are available to you if you think the proposed termination or failure to renew is not lawful In addition, if you think your supplier has failed to comply with the Act, you may wish to consult an attorney in order to enforce
your legal rights
The franchise protection provisions of the Act apply to a variety of franchise agreements The term "franchise" is broadly defined as a license to use a motor fuel trademark which is owned or controlled by a
refiner, and it includes secondary arrangements such as leases of real property and motor fuel supply agreements which have existed continuously since May 15, 1973, regardless of a subsequent withdrawal
of a trademark. Thus, if you have lost the use of a trademark previously granted by your supplier but have continued to receive motor fuel supplies through a continuation of a supply agreement with your supplier, you are protected under the Act
Any issue arising under your franchise which is not governed by this Act will be governed by the law of the State in which the principal place of business of your franchise is located.
Although a State may specify the terms and conditions under which your franchise may be transferred upon the death of the franchisee, it may not require a payment to you (the franchisee) for the goodwill of a
franchise upon termination or nonrenewal
The Act is intended to protect you, whether you are a distributor or a retailer, from arbitrary or discriminatory termination or nonrenewal of your franchise agreement To accomplish this, the Act
first lists the reasons for which termination or nonrenewal is permitted Any notice of termination or nonrenewal must state the precise reason, as listed in the Act, for which the particular termination or nonrenewal is being made These reasons are described below under the headings "Reasons for Termination" and "Reasons for Nonrenewal"
The Act also requires your supplier to give you a written notice of termination or intention not to renew the franchise within certain time periods These requirements are summarized below under the heading "Notice Requirements for Termination or Nonrenewal"
The Act also provides certain special requirements with regard to trial and interim franchise agreements, which are described below under the heading "Trial and Interim Franchises"
The Act gives you certain legal rights if your supplier terminates or does not renew your franchise in a way that is not permitted by the Act These legal rights are described below under the heading "Your Legal Rights"
The Act contains provisions pertaining to waiver of franchisee rights and applicable State law These provisions are described under the heading "Waiver of Rights and Applicable State Law"

Notice of Termination

This summary is intended as a simple and concise description of the general nature of your rights under the Act For a more detailed description of these rights, you should read the text of the Petroleum Marketing Practices Act, as amended in 1994 (15 U S C Secs 2801-2806) This summary does not purport to interpret the Act, as amended, or to create new legal rights.

I Reasons for Termination

If your franchise was entered into on or after June 19, 1978, the Act bars termination of your franchise for any reasons other than those reasons discussed below If your franchise was entered into before June 19, 1978, there is no statutory restriction on the reasons for which it may be terminated If a franchise entered into before June 19, 1978, is terminated, however, the Act requires the supplier to reinstate the franchise relationship unless one of the reasons listed under this heading or one of the additional reasons for nonrenewal described below under the heading "Reasons for Nonrenewal" exists

A Non-Compliance with Franchise Agreement

Your supplier may terminate your franchise if you do not comply with a reasonable and important requirement of the franchise relationship However, termination may not be based on a failure to comply with a provision of the franchise that is illegal or unenforceable under applicable Federal, State or local law. In order to terminate for non-compliance with the franchise agreement, your supplier must have learned of this non-compliance recently The Act limits the time period within which your supplier must have learned of your non-compliance to various periods, the longest of which is 120

[[Page 32788]] days, before you receive notification of the termination

B Lack of Good Faith Efforts

Your supplier may terminate your franchise if you have not made good faith efforts to carry out the requirements of the franchise, provided you are first notified in writing that you are not meeting a requirement of the franchise and you are given an opportunity to make a good faith effort to carry out the requirement. This reason can be used by your supplier only if you fail to make good faith efforts to carry out the requirements of the franchise within the period which began not more than 180 days before you receive the notice of termination

C Mutual Agreement To Terminate the Franchise

A franchise can be terminated by an agreement in writing between you and your supplier if the agreement is entered into not more than 180 days before the effective date of the termination and you receive a copy of that agreement, together with this summary statement of your rights under the Act You may cancel the agreement to terminate within 7 days after you receive a copy of the agreement, by mailing (by certified mail) a written statement to this effect to your supplier

D Withdrawal From the Market Area

Under certain conditions, the Act permits your supplier to terminate your franchise if your supplier is withdrawing from marketing activities in the entire geographic area in which you operate You should read the Act for a more detailed description of the conditions under which market withdrawal terminations are permitted See 15 U S C Sec 2802(b)(E)

E Other Events Permitting a Termination

If your supplier learns within the time period specified in the Act (which in no case is more than 120 days prior to the termination notice) that one of the following events has occurred, your supplier may terminate your franchise agreement

Notice of Termination

(1) Fraud or criminal misconduct by you that relates to the operation of your marketing premises

(2) You declare bankruptcy or a court determines that you are insolvent

(3) You have a severe physical or mental disability lasting at least 3 months which makes you unable to provide for the continued proper operation of the marketing premises

(4) Expiration of your supplier's underlying lease to the leased marketing premises, if (a) your supplier gave you written notice before the beginning of the term of the franchise of the duration of the underlying lease and that the underlying lease might expire and not be renewed during the term of the franchise, (b) your franchisor offered to assign to you, during the 90-day period after notification of termination or nonrenewal was given, any option which the franchisor held to extend the underlying lease or to purchase the marketing premises (such an assignment may be conditioned on the franchisor receiving from both the landowner and the franchisee an unconditional release from liability for specified events occurring after the

assignment); and (c) in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately after the loss of the right of the franchisor to grant possession, the franchisor, upon the written request of the franchisee, made a bona fide offer to sell or assign to the franchisee the franchisor's interest in any improvements or equipment located on the premises, or

offered the franchisee a right of first refusal of any offer from another person to purchase the franchisor's interest in the improvements and equipment

(5) Condemnation or other taking by the government, in whole or in part, of the marketing premises pursuant to the power of eminent domain If the termination is based on a condemnation or other taking,

your supplier must give you a fair share of any compensation which he receives for any loss of business opportunity or good will

(6) Loss of your supplier's right to grant the use of the trademark that is the subject of the franchise, unless the loss was because of bad faith actions by your supplier relating to trademark abuse,

violation of Federal or State law, or other fault or negligence

(7) Destruction (other than by your supplier) of all or a substantial part of your marketing premises If the termination is based on the destruction of the marketing premises and if the premises are rebuilt or replaced by your supplier and operated under a franchise, your supplier must give you a right of first refusal to this new franchise

(8) Your failure to make payments to your supplier of any sums to which your supplier is legally entitled

(9) Your failure to operate the marketing premises for 7 consecutive days, or any shorter period of time which, taking into account facts and circumstances, amounts to an unreasonable period of time not to operate

(10) Your intentional adulteration, mislabeling or misbranding of motor fuels or other trademark violations

(11) Your failure to comply with Federal, State, or local laws or regulations of which you have knowledge and that relate to the operation of the marketing premises

(12) Your conviction of any felony involving moral turpitude

(13) Any event that affects the franchise relationship and as a result of which termination is reasonable

II Reasons for Nonrenewal

If your supplier gives notice that he does not intend to renew any franchise agreement, the Act requires that the reason for nonrenewal must be either one of the reasons for termination listed immediately above, or one of the reasons for nonrenewal listed below

A Failure To Agree on Changes or Additions To Franchise

If you and your supplier fail to agree to changes in the franchise that your supplier in good faith has determined are required, and your supplier's insistence on the changes is not for the purpose of converting the leased premises to a company operation or otherwise preventing the renewal of the franchise relationship, your supplier may decline to renew the franchise

B. Customer Complaints

If your supplier has received numerous customer complaints relating to the condition of your marketing premises or to the conduct of any of your employees, and you have failed to take prompt corrective action

Notice of Termination

after having been notified of these complaints, your supplier may decline to renew the franchise

C. Unsafe or Unhealthful Operations

If you have failed repeatedly to operate your marketing premises in a clean, safe and healthful manner after repeated notices from your supplier, your supplier may decline to renew the franchise

D Operation of Franchise is Uneconomical

Under certain conditions specified in the Act, your supplier may decline to renew your franchise if he has determined that renewal of the franchise is likely to be uneconomical Your supplier may also decline to renew your franchise if he has decided to convert your marketing premises to a use other than for the sale of motor fuel, to sell the premises, or to materially alter, add to, or replace the premises.
[[Page 32789]]

III. Notice Requirements for Termination or Nonrenewal

The following is a description of the requirements for the notice which your supplier must give you before he may terminate your franchise or decline to renew your franchise relationship These notice requirements apply to all franchise terminations, including franchises entered into before June 19, 1978 and trial and interim franchises, as well as to all nonrenewals of franchise relationships

A How Much Notice Is Required

In most cases, your supplier must give you notice of termination or non-renewal at least 90 days before the termination or nonrenewal takes effect
In circumstances where it would not be reasonable for your supplier to give you 90 days notice, he must give you notice as soon as he can do so In addition, if the franchise involves leased marketing premises, your supplier may not establish a new franchise relationship involving the same premises until 30 days after notice was given to you or the date the termination or nonrenewal takes effect, whichever is
later If the franchise agreement permits, your supplier may repossess the premises and, in reasonable circumstances, operate them through his employees or agents
If the termination or nonrenewal is based upon a determination to withdraw from the marketing of motor fuel in the area, your supplier must give you notice at least 180 days before the termination or nonrenewal takes effect

B Manner and Contents of Notice

To be valid, the notice must be in writing and must be sent by certified mail or personally delivered to you It must contain
(1) A statement of your supplier's intention to terminate the franchise or not to renew the franchise relationship, together with his reasons for this action,
(2) The date the termination or non-renewal takes effect, and
(3) A copy of this summary

IV Trial Franchises and Interim Franchises

The following is a description of the special requirements that apply to trial and interim franchises

A Trial Franchises

A trial franchise is a franchise, entered into on or after June 19, 1978, in which the franchisee has not previously been a party to a franchise with the franchisor and which has an initial term of 1 year or less A trial franchise must

Notice of Termination

be in writing and must make certain disclosures, including that it is a trial franchise, and that the franchisor has the right not to renew the franchise relationship at the end of the initial term by giving the franchisee proper notice

The unexpired portion of a transferred franchise (other than as a trial franchise, as described above) does not qualify as a trial franchise

In exercising his right not to renew a trial franchise at the end of its initial term, your supplier must comply with the notice requirements described above under the heading "Notice Requirements for Termination or Nonrenewal"

B Interim Franchises

An interim franchise is a franchise, entered into on or after June 19, 1978, the duration of which, when combined with the terms of all prior interim franchises between the franchisor and the franchisee,
does not exceed three years, and which begins immediately after the expiration of a prior franchise involving the same marketing premises which was not renewed, based on a lawful determination by the
franchisor to withdraw from marketing activities in the geographic area in which the franchisee operates

An interim franchise must be in writing and must make certain disclosures, including that it is an interim franchise and that the franchisor has the right not to renew the franchise at the end of the term based upon a lawful determination to withdraw from marketing activities in the geographic area in which the franchisee operates

In exercising his right not to renew a franchise relationship under an interim franchise at the end of its term, your supplier must comply with the notice requirements described above under the heading "Notice
Requirements for Termination or Nonrenewal"

V  Your Legal Rights

Under the enforcement provisions of the Act, you have the right to sue your supplier if he fails to comply with the requirements of the Act. The courts are authorized to grant whatever equitable relief is necessary to remedy the effects of your supplier's failure to comply with the requirements of the Act, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief Actual damages, exemplary (punitive) damages under certain circumstances, and reasonable attorney and expert witness fees are also authorized For a more detailed description of these legal remedies you
should read the text of the Act 15 U S C Secs 2801-2806

VI Waiver of Rights and Applicable State Law

Your supplier may not require, as a condition of entering into or renewing the franchise relationship, that you relinquish or waive any right that you have under this or any other Federal law or applicable State law In addition, no provision in a franchise agreement would be valid or enforceable if the provision specifies that the franchise would be governed by the law of any State other than the one in which the principal place of business for the franchise is located

Further Discussion of Title I--Definitions and Legal Remedies

I Definitions

Section 101 of the Petroleum Marketing Practices Act sets forth definitions of the key terms used throughout the franchise protection provisions of the Act The definitions from the Act which are listed
below are of those terms which are most essential for purposes of the summary statement (You should consult section 101 of the Act for additional definitions not included here )

A Franchise

A "franchise" is any contract between a refiner and a distributor, between a refiner and a retailer, between a distributor and another distributor, or between a distributor and a retailer, under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or

distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use

The term "franchise" includes any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy The term also includes any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed under a trademark owned or controlled by a refiner, or under a contract which has existed continuously since May 15, 1973, and pursuant to which, on May 15, 1973, motor fuel was sold, consigned or distributed under a

[[Page 32790]] trademark owned or controlled on such date by a refiner. The unexpired portion of a transferred franchise is also included in the definition of the term

B Franchise Relationship

The term "franchise relationship" refers to the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise

C Franchisee

A "franchisee" is a retailer or distributor who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel

D Franchisor

A "franchisor" is a refiner or distributor who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel

E Marketing Premises

"Marketing premises" are the premises which, under a franchise, are to be employed by the franchisee in connection with the sale, consignment, or distribution of motor fuel

F Leased Marketing Premises

"Leased marketing premises" are marketing premises owned, leased or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel

G Fail to Renew and Nonrenewal

The terms "fail to renew" and "nonrenewal" refer to a failure to reinstate, continue, or extend a franchise relationship (1) at the conclusion of the term, or on the expiration date, stated in the relevant franchise, (2) at any time, in the case of the relevant franchise which does not state a term of duration or an expiration date, or (3) following a termination (on or after June 19, 1978) of the relevant franchise which was entered into prior to June 19, 1978 and has not been renewed after such date

II Legal Remedies Available to Franchisee

The following is a more detailed description of the remedies available to the franchisee if a franchise is terminated or not renewed in a way that fails to comply with the Act

A  Franchisee's Right to Sue

A franchisee may bring a civil action in United States District Court against a franchisor who does not comply with the requirements of the Act  The action must be brought within one year after the date of termination or nonrenewal or the date the franchisor fails to comply with the requirements of the law, whichever is later

B  Equitable Relief

Courts are authorized to grant whatever equitable relief is necessary to remedy the effects of a violation of the law's requirements  Courts are directed to grant a preliminary injunction if the franchisee shows that there are sufficiently serious questions, going to the merits of the case, to make them a fair ground for litigation, and if, on balance, the hardship which the franchisee would suffer if the preliminary injunction is not granted will be greater than the hardship which the franchisor would suffer if such relief is granted
Courts are not required to order continuation or renewal of the franchise relationship if the action was brought after the expiration of the period during which the franchisee was on notice concerning the franchisor's intention to terminate or not renew the franchise agreement

C  Burden of Proof

In an action under the Act, the franchisee has the burden of proving that the franchise was terminated or not renewed  The franchisor has the burden of proving, as an affirmative defense, that the termination or nonrenewal was permitted under the Act and, if applicable, that the franchisor complied with certain other requirements relating to terminations and nonrenewals based on condemnation or destruction of the marketing premises

D  Damages

A franchisee who prevails in an action under the Act is entitled to actual damages and reasonable attorney and expert witness fees  If the action was based upon conduct of the franchisor which was in willful disregard of the Act's requirements or the franchisee's rights under the Act, exemplary (punitive) damages may be awarded where appropriate
The court, and not the jury, will decide whether to award exemplary damages and, if so, in what amount.
On the other hand, if the court finds that the franchisee's action is frivolous, it may order the franchisee to pay reasonable attorney and expert witness fees

E  Franchisor's Defense to Permanent Injunctive Relief

Courts may not order a continuation or renewal of a franchise relationship if the franchisor shows that the basis of the non-renewal of the franchise relationship was a determination made in good faith and in the normal course of business
  (1) To convert the leased marketing premises to a use other than the sale or distribution of motor fuel,
  (2) To materially alter, add to, or replace such premises,
  (3) To sell such premises,
  (4) To withdraw from marketing activities in the geographic area in which such premises are located, or
  (5) That the renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or additions to the franchise provisions which may be acceptable to the franchisee
In making this defense, the franchisor also must show that he has complied with the notice provisions of the Act
This defense to permanent injunctive relief, however, does not affect the franchisee's right to recover actual damages and reasonable attorney and expert witness fees if the nonrenewal is otherwise prohibited under the Act

Issued in Washington, D C on June 12, 1996 Marc W Chupka,Acting Assistant Secretary for Policy [FR Doc 96-16124 Filed 6-24-96, 8 45 am] BILLING CODE 6450-01-P

Notice of Termination

