UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 OCT 20  A II: 54

U.S. DISTRICT COURT
DISTRICT OF MASS.

MOTIVA ENTERPRISES LLC,  :    C.A. No.:
    Plaintiff,  :
v.  :
  :
LAKEVIEW AUTO CARE INC. and  :
MATTHEW D. HERMAN,  :
    Defendants.  :    OCTOBER 19, 2004

**04 CV 12194 DPW**

## MEMORANDUM OF LAW IN SUPPORT OF MOTIVA'S APPLICATION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE

Plaintiff Motiva Enterprises LLC ("Motiva") hereby submits this Memorandum of Law in Support of its Application for Preliminary Injunction and Order to Show Cause, attached hereto and incorporated herein. Motiva seeks preliminary injunctive relief under Rule 65(a) of the Federal Rules of Civil Procedure and asks the Court to order defendants Matthew D. Herman and Lakeview Auto Care Inc. ("Defendants") to vacate and surrender possession of the Station immediately and to return to Motiva any and all of Motiva's personal property, including, but not limited to, any and all of Motiva's equipment and fixtures located at the Station, without damage to any such property.

## I.    Relevant Facts

This action arises from a Shell gasoline franchise relationship between Motiva and defendants Matthew D. Herman, a resident of Norfolk County, and Lakeview Auto Care, Inc., a Massachusetts corporation with its principal place of business in Braintree, Massachusetts (together "Defendants"). Mr. Herman, on behalf of his company, Lakeview Auto Care, Inc., signed a lease for a gas station owned by Motiva (the "Station") and simultaneously entered a sales agreement with Motiva for the marketing of Motiva's Shell-branded gasoline products to

motorists at the Station. The Station, its physical assets and equipment, including underground

gasoline storage tanks and dispensers, are all owned by Motiva. The property and equipment

were leased to Defendants pursuant to the Retail Facility Lease (the "Lease") and Retail Sales

Agreement ("Sales Agreement"), both effective June 1, 2003 (attached to the Verified

Complaint as Exhibits A and B, respectively).

Among the relevant provisions of the Sales Agreement are the following:

a.      "Subject to any limitations imposed by Law, and in addition to all other
        rights or remedies available, Seller [Motiva] may terminate this
        Agreement for any of the following grounds . . . (3) The occurrence of
        an event which is relevant to the relationship under this Agreement and
        as a result of which termination of this Agreement is reasonable,
        including, without limitation, the following events: . . .(viii) Retailer's
        failure to maintain a sufficient amount of all grades of Products for
        resale at Retailer's Station, or Retailer's failure to operate Retailer's
        Station, for seven consecutive days, or such lesser period which under
        the facts and circumstances constitutes an unreasonable period of time."
        (Sales Agreement Article 22(a)(3)(viii)).

b.      "Retailer shall maintain a sufficient amount of all grades of Products for
        resale at Retailer's Station." (Sales Agreement Article 5(d)).

Among the relevant provisions of the Lease is the following:

"(a)    Upon termination or non-renewal of this Lease, Lessee shall peaceably
        surrender the Premises to Lessor. The Premises must be surrendered to
        Lessor in as good condition as when received, ordinary wear and tear
        excepted. If necessary, Lessor may re-enter and repossess the Premises
        without affecting any other rights or remedies available to Lessor under
        this Lease or otherwise.

(b)     If Lessee fails to remove any of Lessee's property upon termination or
        non-renewal of this Lease such property will be deemed abandoned and
        Lessor may dispose of Lessee's property without recourse.

(c)     In addition to Lessor's rights under Article 19(b), Lessor will be entitled
        to compensation, as liquidated damages and not as a penalty, in the
        amount of $300.00 per day from Lessee from the date of termination or
        non-renewal of this Lease until the date of final removal of Lessee's

property and restoration of the Premises by Lessor or Lessee, as the case may be." (Lease Article 19).

On a number of occasions, Defendants failed to purchase sufficient fuel from Motiva and ran out of fuel to sell to customers, thereby breaching their Sales Agreement. Motiva sent Defendants a warning letter, on or about September 7, 2004 (attached to the Verified Complaint as Exhibit C), notifying the Defendants of the consequences of Defendants' continued failure to operate the Station for the sale of motor fuel. On September 22, 2004, Defendants again ran out of all grades of gasoline at the Station. Defendants continued without any gasoline for sale at the Station for the next seven consecutive days (through September 29, 2004), thereby breaching Sales Agreement, Sections 22(a)(3)(viii) and 5(d).

Under the PMPA, Section 2802(b)(2)(C) and 2802(c)(9), failure to sell gasoline for seven consecutive days constitutes one of the PMPA's enumerated grounds for termination of a franchise.

On October 1, 2004, two Motiva representatives hand-delivered a termination letter to Defendants stating the grounds for termination pursuant to the PMPA along with a copy of that statute's provisions (letter attached to the Verified Complaint as Exhibit D). According to the termination letter, the franchise relationship and the Lease and Sales Agreement all terminated on October 4, 2004. The termination letter gave the following grounds for termination of the franchise:

    a.    Failure to operate the Station for seven consecutive days for resale of motor fuel constitutes grounds for termination under PMPA Sections 2802(b)(2)(C) and 2802(c)(9) and under the Sales Agreement Article 22(a)(3)(viii).

    b.    Failure to operate the Station for seven consecutive days for resale of motor fuel also constitutes grounds for termination under PMPA Section

2802(b)(2)(A) and the requirement of the Sales Agreement Article 5(d) that Defendants must "maintain a sufficient amount of all grades of Seller's branded gasoline."

c.    Failure to exert good faith efforts to carry out the provisions of the franchise after receipt of Motiva's September 7, 2004 warning letter constitutes independent grounds for termination under PMPA Section 2802(b)(2)(B).

Under the PMPA, notice of less than 90 days for termination is permitted where requiring the franchisor to wait to terminate would not be "reasonable." See PMPA Section 2804(b)(1)(A). Failure to sell fuel for seven consecutive days is one such situation, as it violates the fundamental purpose of the gasoline franchise: to sell Shell-branded gasoline at the Station.

Under Article 19(a) of the Lease, Defendants obligated themselves "[u]pon termination or non-renewal of this Lease, Lessee shall peaceably surrender the Premises to Lessor . . ."

Despite the lawful termination of the franchise, Defendants have refused to vacate the Station.

## II.    **Applicable Legal Standard**

"To determine the appropriateness of granting or denying a preliminary injunction, we have instructed trial courts to use a quadripartite test, taking into account:

1.    The likelihood of success on the merits;
2.    The potential for irreparable injury;
3.    A balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and
4.    The effect on the public interest of a grant or denial of the restrainer."

Narragansett Indian Tribe, et al. v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991) (internal citations omitted).

**III.**   **Argument**

**A.**   **A Court will likely find that Motiva's October 4, 2004 termination was justified and proper under the PMPA, 15 U.S.C. § 2801 et seq..**

In order to properly terminate a franchise under the PMPA, only one permissible ground must be proffered. Here, Motiva has offered three independent grounds: (i) under PMPA Sections 2802(b)(2)(C) and 2802(c)(9), the failure to operate the Station for seven consecutive days for resale of motor fuel; (ii) under PMPA Section 2802(b)(2)(A) for breach of the requirement of the Sales Agreement Article 5(d) that Defendants must "maintain a sufficient amount of all grades of Seller's branded gasoline"; and (iii) under PMPA Section 2802(b)(2)(B), the failure to exert good faith efforts to carry out the provisions of the franchise after receipt of Motiva's September 7, 2004 warning letter about product outages at the Station. If Motiva can prove any one of these three grounds, its termination was justified. Since there is no factual dispute that Defendants failed to have any Shell-branded gasoline for sale at the Station at all during the period from September 22 through 29, 2004, Motiva is likely to easily prevail on the grounds in (i) and (ii) above.

For termination to be proper under the PMPA, the notice provisions of PMPA Section 2804 must be met. Motiva's representatives hand-delivered the termination letter to Defendants on October 1, 2004, along with the requisite copy of the PMPA provisions. The letter required Defendants to vacate by October 4, 2004. Under the PMPA, notice of less than 90 days for termination is permitted where requiring the franchisor to wait to terminate would not be "reasonable." See PMPA Section 2804(b)(1)(A). Failure to sell fuel for seven consecutive days is one such situation, as

it violates the fundamental purpose of the gasoline franchise:  to sell Shell-branded gasoline at the Station.  See, e.g., Dedvukaj v. Equilon, 301 F. Supp. 2d 664, 668-670 (E.D. Mich. 2004)(granting summary judgment for franchisor who terminated with apparently no notice for failure to sell gasoline for seven consecutive days and discussing relevant PMPA notice cases); Koylum v. Peksen, 223 F. Supp. 2d 405, 426-27 (E.D.N.Y. 2002)(4 days' notice adequate in a gasoline misbranding case; discussion of case law on PMPA notice).

Motiva's likelihood of success on the merits it very high, particularly given the undisputed seven-day outage.

**B.    Motiva will continue to be irreparably harmed by denial of the use and enjoyment of its real property and by damage to the goodwill of the Shell brand.**

In terms of irreparable injury, real estate interests have "long been thought unique."  Narragansett Indian Tribe, et al. v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991) (citing K-Mart v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989)).  Defendants' refusal, despite their contractual obligation to peaceably vacate the Station upon termination of the Lease, unfairly deprives Motiva of the use of its own property -- the land, the Station and the equipment.  The damage this causes Motiva daily cannot be recompensed through money damages.

Defendants' refusal to vacate also irreparably harms Motiva's goodwill and business reputation, damaging the Shell brand and thereby other Shell franchisees, and causes Motiva to suffer financial losses in unknown amounts for which Motiva will never fully be compensated.

The harm caused to Motiva is therefore "irreparable."

**C.    In contrast to the irreparable harm caused to Motiva, Defendants, operators of a failed business with a terminated franchise, are not harmed by being made to vacate Motiva's Station as contractually required.**

Defendants would be in no worse a position than their present one if they were ordered to vacate the Station. As terminated franchisees squatting on Motiva's property without a lease, Defendants have no right to operate any business at all on the premises and therefore have no right that could be lost in leaving.

**D.    The public interest weighs in favor of Motiva.**

Defendants cannot articulate a single manner in which the public interest would be served by permitting Defendants to remain in possession of the Station while this matter goes to trial. Certainly, the motoring public is not served by having the Station remain out of service. Nor is it in the public interest to permit property rights and contract rights to be flouted. Moreover, the public has an interest, manifest in the PMPA, an act of Congress, in maintaining a fair and careful balance of rights between franchisors and franchisees.

**IV.    Conclusion**

For all of the foregoing reasons, Motiva respectfully requests that the Court grant its Application for Preliminary Injunction and Order to Show Cause.

Dated:  October 19, 2004

PLAINTIFF,
MOTIVA ENTERPRISES LLC,

Gregg P. Goumas (BBO# 643661)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
(tel) (860) 251-5000
(fax) (860) 251-5219
Ggoumas@goodwin.com
Its Attorney

-8-